JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Denise King

### DEFENDANTS
United Review Service, Margaret Barron, John Does 1-10 and ABC Companies 1-10

**(b)** County of Residence of First Listed Plaintiff: Gloucester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Gloucester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mark R. Natale, Esquire
Law Office of Leo B. Dubler, III, Esquire
20000 Horizon Way, Suite 300, Mount Laurel, NJ 08054

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Labor Standards Act
Brief description of cause:
Retaliation under the Fair Labor Standards Act

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 03/06/2018
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**Law Offices of Leo B. Dubler, III, LLC**
20000 Horizon Way, Suite 300
Mount Laurel, New Jersey 08054
(856) 235-7075
By: Mark R. Natale, Esquire (071292014)
ATTORNEYS FOR PLAINTIFF DENISE KING

| | |
|---|---|
| DENISE KING,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED REVIEW SERVICE, MARGARET BARRON, JOHN DOES 1-10, and ABC COMPANIES 1-10, jointly, severally, and in the alternative,<br><br>Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Docket No.:<br><br>**COMPLAINT AND JURY DEMAND** |

The Plaintiff, Denise King, residing in the City of Gibbsboro, County of Gloucester, and State of New Jersey, complaining against the Defendants, United Review Service, Margaret Barron, John Does 1-10, and ABC Companies 1-10, jointly, severally and in the alternative, says:

## PARTIES

1. Plaintiff Denise King ("Denise) began working for Defendant United Review Service ("United") in or around 1990.

2. At all relevant times, Defendant Margaret Barron ("Barron") was the Chief Operating Officer and Denise's supervisor at United.

## JURISDICTION

3. This court has federal question jurisdiction under 28 U.S.C. 1331.

4. Plaintiff's claims arise out of the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. 211.

5. This Court can exercise supplemental jurisdiction over Plaintiff's Common Law claims, pursuant to 28 U.S.C. 1367.

## COUNT ONE

6. Denise began working for Defendant United in or around 1990.

7. While originally hired on a per diem basis, Denise quickly became a full time case manager.

8. For many years, Denise performed her job well.

9. Denise worked as an RN Certified Case Manager for United.

10. Denise would evaluate clients, either working from home or meeting with the clients.

11. While the number of clients Denise would meet with would change on any given week, Denise was paid an hourly rate for a set amount of hours that it was predicted she would work.

12. When originally hired, this set amount of hours was 37.5 hours per week.

13. If Denise or another case manager worked over 37.5 hours per week, they would be paid for the additional hours they worked, pursuant to their hourly rate.

14. Denise's paycheck was never intended to be a set salary – it was intended to be hourly compensation for the hours worked.

15. Therefore, during the early stages of Denise's tenure with United, if she worked more than the set amount of 37.5 hours, she got compensated for it.

16. Importantly, this is before Defendant Barron was Denise's supervisor and Chief Operating Officer of United.

17. For many years, Denise rarely worked over the 37.5 hour set amount.

18. However, when she did, she was compensated for it.

19. In the fall of 2016, Denise's workload changed drastically.

20. Denise was routinely working over the set amount of 37.5 hours.

21. In fact, in some weeks she was working as high as 90 hours per week.

22. Despite how much Denise was working, she was not compensated for any of her time over the set amount of 37.5 hours per week.

23. Defendant Barron did not follow the same practice of compensating Denise for every hour she worked.

24. Instead, Denise was forced to work extra hours without compensation.

25. Denise had a reasonable belief that she had a right to be compensated for every hour she worked.

26. Denise began complaining to her boss that she felt she was not being compensated fairly or properly.

27. Denise asked her boss to be paid for all of the hours that she worked.

28. Denise told her boss that it was unfair for her to work all of these hours without being paid.

29. Denise repeatedly told Defendant Barron that she could not keep working without fair compensation for all of the hours she worked.

30. Rather than respond to Denise's good faith complaints about her pay, Defendant Barron insisted that they talk about the issue when Denise was at United's corporate office.

31. Defendant Barron insisted the two talk at a March 9, 2016 meeting at Barron's office.

32. While frustrated that Defendant Barron continued to ignore her repeated complaints about the illegal pay practices and her requests to be paid for every hour that she worked, Denise prepared for the March 9, 2016 meeting.

33. She went to the meeting with her concerns in mind, and was prepared to resign if she was not going to be paid properly.

34. Much to her surprise, when Denise arrived at the meeting, Defendant Barron did not want to talk about any of her concerns.

35. Instead, Defendant Barron handed Denise a "performance plan."

36. This performance plan outlined a list of areas that Denise had to improve.

37. The plan was based on falsehoods and misrepresentations.

38. The plan was clearly an attempt by Defendant Barron to counter Denise's complaints about the unfair and illegal payment practices of Defendants United and Barron.

39. The plan allowed for a 90 day period where Denise could improve her performance.

40. Denise edited the performance plan to reflect her objections to the false and misleading statements by Defendant Barron.

41. Denise also, through edits to the performance plan document and by attaching a supplemental document, stated that she would not be accepting cases that pushed her over 40 hours a week without being told she would be compensated for all hours worked.

42. Denise told Barron that being paid for every hour worked was a requirement for her to stay employed at United.

43. Denise wrote on the performance plan that she must be compensated for every hour she worked.

44. Denise attached a supplemental document to the performance plan that again demanded that she be paid for every hour worked.

45. Denise signed and submitted this document on March 11, 2016.

46. Denise made clear, in verbal conversations, text messages, and in her documentations to the "performance plan", that she felt the pay practices of United and Barron were unfair and illegal.

47. Denise demanded to be paid for every hour worked, which she had a reasonable belief was her legal right.

48. The performance plan was thus supposed to begin on March 14, 2016.

49. On March 14, 2016, Denise worked from her home as usual.

50. In the early evening of March 14, 2016, Denise left the house with her husband.

51. When she came back, she was stunned to see Defendant Barron at her front door.

52. Denise went inside the house, as she felt uncomfortable and intimidated by her boss showing up at her house.

53. Denise tried to log on to her e-mail, and discovered that she was already locked out of the email system.

54. Denise texted Defendant Barron to tell her that she did not feel comfortable meeting like this.

55. Denise asked Defendant Barron to leave so they could have their conversation at a different time and place.

56. Defendant Barron refused to leave.

57. Defendant Barron insisted on staying at Denise's property until Denise came out and spoke to her.

58. Denise's husband politely asked Defendant Barron to leave their house.

59. Defendant Barron refused.

60. Denise's husband told Defendant Barron that they would be forced to contact the local police if she did not leave.

61. Defendant Barron refused to leave.

62. The local police were called and reported to Denise's home.

63. Defendant Barron told the police that Denise was terminated, and she was there to retrieve company property.

64. Denise gave the police equipment and files she had at her home, and only at that point did Defendant Barron leave her house.

65. Denise was terminated because of her insistence that she be paid for every hour worked.

66. Denise was terminated after Defendant Barron received her March 11, 2016 fax editing the performance plan to require Denise be paid for every hour worked.

67. Defendant Barron hoped her false and misleading "performance plan" would stop Denise's good faith complaints about her pay.

68. When that failed, and Denise continued to assert her rights, Defendant Barron fired her.

69. Denise was fired for making good faith complaints about her rights to be paid for every hour she worked , in violation of the anti-retaliation provision of the Fair Labor Standards Act ("FLSA"),

70. Denise was supposed to be paid for every hour she worked – both pursuant to relevant law and also company policy.

71. Throughout her over twenty five years with United, Denise was paid for every hour she worked.

72. However, that practice was eliminated when Defendant Barron took over as Chief Operating Officer.

73. Instead, Denise was not paid for every hour she worked, even if she worked well over forty hours a week.

74. Denise objected to this practice.

75. Because of her objections, Denise was terminated in retaliation.

76. Denise was retaliated against by United and Barron.

77. Denise was retaliated against by the Defendants because of her good faith complaints and objections about pay practices she reasonably believed were illegal.

78. Barron aided and abetted United in retaliating against Denise.

79. Defendants engaged in a conspiracy to retaliate against Denise, in violation of FLSA.

80. The retaliatory and malicious actions of Defendants Barron and United were directed at Denise in violation of the FLSA.

81. The illegal retaliation by Defendants Barron and United were purposeful, malicious, and designed to cause Denise harm, which it, in fact, did.

82. As a result of the retaliatory acts of the Defendants, Denise has been caused to suffer loss of pay and a tremendous amount of stress that the loss of pay has caused.

83. The intentional and malicious nature of the actions of Defendants Barron and United justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Denise King demands judgment against the Defendants, United Review Services, Margaret Barron, John Does 1-10, and ABC Companies 1-10,

jointly, severally, and in the alternative, for damages; interest; emotional upset; psychological harm, injuries and suffering; damages for humiliation, anxiety, and embarrassment; attorney's fees; costs of suit; costs of experts; punitive damages; equitable relief; injunctive relief; any and all relief provided for by New Jersey's Conscientious Employee Protection Act; and any and all relief that the Court deems just and proper.

## COUNT TWO

84. Denise repeats and incorporates all of the facts and all of the paragraphs of Count One of the Complaint as if set forth at length herein.

85. Defendants John Does 1-10 are the fictitious names of real individuals, both male and female, the real names of which are currently not known.

86. Defendants ABC Companies 1-10 are the fictitious names of real business entities (corporations, LLCs, partnerships, limited partnerships, joint ventures, municipal entities, sole proprietorships, governmental entities, etc.), the real identities of which are currently not known.

87. Defendants John Does 1-10 and ABC Companies 1-10 are individuals, entities, employees, owners, managers, supervisors, and shareholders of Defendant United, the company for which Denise worked.

88. Defendants John Does 1-10 and ABC Companies 1-10 are individuals or entities that owned, controlled, managed, or supervised Defendant United and its owners, managers, supervisors, employees, and shareholders, while Denise was employed by United.

89. Defendants John Does 1-10 and ABC Companies 1-10 represent individuals, United employees, supervisors, and managers, as well as business entities as described above,

who retaliated against Denise because of her whistleblowing activities and refusal to participate in illegal and unethical behavior, in violation of FLSA.

90. Defendants John Does 1-10 and ABC Companies 1-10 aided and abetted Defendants United, and Barron in retaliating against Denise because of her whistleblowing activities and refusal to accept unfair and illegal payment practices, in violation of FLSA.

91. Defendants John Does 1-10, ABC Companies 1-10, United, and Barron conspired to retaliate against Denise because of her whistleblowing activities in response to unfair and illegal payment practices in violation of FLSA.

92. Defendants John Does 1-10 and ABC Companies 1-10 aided and abetted Defendants United and Barron in terminating Denise from her position at Defendant United, in violation of FLSA.

93. Defendants John Does 1-10, ABC Companies 1-10, United and Barron conspired to terminate Denise from her position at United, in violation of FLSA.

94. The above-described actions of Defendants John Does 1-10, ABC Companies 1-10, United and Barron were violations of FLSA.

95. The actions of Defendants John Does 1-10, ABC Companies 1-10, United and Barron, were intentional and malicious and designed to cause Denise harm, which they did.

96. The intentional and malicious nature of the actions of Defendants John Does 1-10, ABC Companies 1-10, United and Barron justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Denise King demands judgment against the Defendants, United Review Services, Barron, John Does 1-10, and ABC Companies 1-10, jointly,

severally, and in the alternative, for damages; interest; emotional upset; psychological harm, injuries and suffering; damages for humiliation, anxiety, and embarrassment; attorney's fees; costs of suit; costs of experts; punitive damages; equitable relief; injunctive relief; any and all relief provided for by Fair Labor Standards Act; and any and all relief that the Court deems just and proper.

## JURY DEMAND

The Plaintiff hereby requests a trial by jury as to all issues referred to in the Complaint.

## CERTIFICATION

I certify that this matter is not the subject of any pending lawsuit or arbitration. I further certify that no other parties should be joined in this matter.

**Law Offices of Leo B. Dubler, III, LLC**
Attorney for Plaintiff Denise King

_____
Mark R. Natale

Dated: March 6, 2018